ELLIS, Judge.
Plaintiff sues as the surviving widow of Joseph Ardoin, who died from injuries suffered when he fell from the rear seat of an automobile driven by his daughter, Mrs. Bernie LeDoux, which motor vehicle was owned by and driven with the consent of her husband, Bernie LeDoux. This suit is brought against the liability insurer of the husband.
Plaintiff alleged that the automobile was being driven at an excessive rate of speed under prevailing conditions and also charged that the driver failed to keep a proper lookout and to pay due regard to the faulty characteristics of the road; that the owner failed to keep the automobile in the proper state of inspection and repair and specifically that he failed to keep the right rear door in proper condition and repair, and failed to warn the deceased and others of the dangerous state of repair of the right rear door.
The defendant denied these charges. The case was duly tried and judgment rendered for the defendant, dismissing the case at plaintiff’s cost from which the latter has appealed.
It is shown that on the date of the accident, Mrs. Bernie LeDoux was driving her husband’s automobile on the road from Eunice to Mamou. In the back seat of the car were her daughter, her son and her father, who was seated on the outside next to the right rear door. It is shown that the automobile was a 1950 Mercury and that the rear door opened toward the back. In other words, it closed "gainst the center post. A short distance out of Eunice the occupants of the car felt the air rush in and as they looked the deceased was falling out of the door with only his feet left in the car.
Plaintiff contends that the doctrine of res ipsa loquitur is applicable in this case and cites in support thereof Morales v. Employers Liability Assurance Corporation, La.App.1942, 7 So.2d 660, affirmed by Supreme Court in 202 La. 755, 12 So.2d 804, 808. Plaintiff contends that the court applied the doctrine in the case cited, however, an examination of the case will reveal that the doctrine was not applied. In the cited case, several people were riding as guests in the rear of an ambulance which was taking a relative of theirs from the State Hospital in Independence to a hospital in the City of New Orleans. The plaintiff, who was one of the guests, fell *125 from the ambulance when a side door opened. The 'Court stated that “Mrs. Morales sat on the outside, or the side against the right frame of the ambulance and just to the rear of the door out of which she fell.”
The deceased in the case at bar was in the same position with regard to the door out of which he fell.
With regard to the contention that the doctrine of res ipsa loquitur was applicable in the cited case, the Supreme Court stated:
“Counsel for plaintiff urges that the doctrine of res ipsa loquitur is applicable to this case and that in the absence of evidence by defendants showing how the accident occurred, or, at least, that they were without fault, there results from the accident itself a presumption of negligence which defendants must overcome if they are to defeat plaintiff’s claim.
“It is fundamental that negligence is never presumed from the happening of an accident, but the happening of an accident with its attendant circumstances may justify the inference of negligence. Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447.
“To render the doctrine applicable in an automobile accident, the accident must be one which ordinarily could not happen except through defects in the car or fault in its operation, or both. But the doctrine applies only where the circumstances leave no room for a different presumption, and it must appear that the probable cause was within the control of the operator of the automobile against whom the doctrine is sought to be invoked. 5 Am. Jur., Automobiles, § 607, p. 839.
******
" * * * It is not at all beyond the realm of possibility that the accident might have been caused by plaintiff inadvertently pressing down upon the handle of the door, since this was the only way in which the door could have been opened.
“It is not an unusual occurrence for an occupant of an automobile to inadvertently lean against the door, or to depress its handle in such a way as’ to cause the door to fly open, and in many cases causing the occupant to fall out of the car.
“It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked. Quass v. Milwaukee Gas Light Co., 168 Wis. 575, 170 N.W. 942; Klein v. Beeten, 169 Wis. 385, 172 N.W. 736, 5 A.L.R. 1237.
“Moreover, the portion of the ambulance occupied by plaintiff and her two near relatives was in their exclusive control and not in the control of the driver of the ambulance. They were in a better position than the driver to adjust themselves to the seats provided and the conditions under which they chose to ride. The driver, while in the cab, was not in a position to discharge his duties and at the same time to take care of the occupants of the rear portion of the ambulance, who were fully able to take care of themselves. Therefore, the possible or probable causes of the accident were not so within the control of the driver of the ambulance as to bring the rule of res ipsa loquitur into operation.”
*126 In the case at bar it is shown that the car was being driven on a black top road at approximately 45 miles per hour, and that the condition of the road was approximately like other black top roads, somewhat bumpy or wavy, but with no apparent defects such as holes within the vicinity of the accident. In other words, Mrs. Le Doux was driving in a careful and prudent manner and there is no proof of any act of hers which might have caused the car to swerve so as to spring the door open nor any condition of the road that could have caused the door to come open.
From the facts in this case it is shown that this accident might have happened as a result of “one of two causes,” the most logical being that the deceased for some reason unknown, either by mistake in attempting to roll a window up or down or deliberately to more securely close the rear door, touched the latch which controlled the opening and closing of the door. In addition, the rear portion of this automobile which was occupied by the decedent and the two children was “in their exclusive control and not in the control of the driver * * * ” of the automobile. The language above quoted in the Morales case, supra, is particularly applicable to the case at bar, and the same conclusion as was reached in that case was applicable here, viz.: “Therefore, the possible or probable causes of the accident were not so within the control of the driver of the ambulance as to bring the rule of res ipsa loquitur into operation.”
This court, in the case of Larkin v. State Farm Mutual Automobile Insurance Company, La.App., 91 So.2d 94, 95, recently decided with Judge Tate as the organ of the court, in a concise but comprehensive discussion of the doctrine of res ipsa loquitur, stated in part:
“In the comprehensive article by a leading Louisiana tort authority, Professor Wex S. Malone, “Res Ipsa Loquitur and Proof by Inference — A discussion of the Louisiana cases’, 4 La.Law Review 70, upon which defendant’s argument is in large part based, the rule is summarized:
“ ‘It is commonly stated that two conditions must be met before the doctrine can apply. First, the accident must be one that ordinarily would not occur in the absence of negligence.’ 4 La.Law Review 76.
“ ‘A second requirement * * * is commonly said that res ipsa loquitur is not available unless it is shown that the defendant was in exclusive control of the agency that caused the injury,’ 4 La.Law Review 80.
* * * * * *
“As Professor Malone’s article extensively cited above makes plain, the Latin phrase (or ‘doctrine’) of ‘res ipsa loquitur’ simply means: the thing (accident) speaks for itself. The negligent act is deduced or inferred from the fact of the accident itself, whereas ‘most accidents tells us only that there has been a mishap; they afford no indication as to where the responsibility should be placed’, 4 La.Law Review 75. In these latter instances, the legal conclusion that given conduct was actionable negligence is deduced or inferred from the facts surrounding the accident, rather than from the accident itself.”
Applying the above quoted rules to the case at bar it cannot be said that the owner or driver, Mrs. LeDoux, was in exclusive control of the agency that caused the injury, viz., the right rear door. On the contrary and, furthermore, no negligent act upon the part of the owner or the driver can be deduced or inferred from the fact of the accident itself, only that there had been a mishap. The accident itself afforded no indication as to where the responsibility should be placed. The doctrine is not applicable in this case.
The only remaining question is whether plaintiff has borne the burden of *127 proof necessary to establish negligence on the part of the owner and/or the driver of the automobile in that it is contended that the latch on the right rear door was in disrepair to the knowledge of the owner and that the black top highway was rough and that Mrs. LeDoux was driving the automobile at an excessive speed and in a careless manner so as to cause the defective latch on the right rear door to allow this door to come open, causing the decedent’s death.
As to the condition of the road there is no evidence in this record as to the exact location of the accident, that is, as to the place where the door came open and the deceased fell out. There is also only general evidence that the edges of the black top road were rough, and when pinned down to specific evidence as to a bump within an area on the road where the witness thought the accident happened, there is, as stated, no testimony to show that the door came open near this bump or that the accident occurred at such a place. The testimony is positive that the owner of the car had the vehicle checked regularly and was very careful in seeing that it was kept in first class condition for its age. He knew nothing of any defect in the latch on the right rear door prior to the accident, and subsequent to the accident the door was examined and tried by an insurance adjuster in the presence of the plaintiff and plaintiff’s son and nothing wrong was noted at that time. The accident occurred on Nov. 21, 1954 and the mechanic who attended to the automobile in question for Mr. LeDoux testified that on approximately Dec. 3 the car was sent to him for a motor tune up and at that time he discovered that the two rear doors were rattling and the left front door, also, and he tightened the screws and adjusted it so that it would fit good. He stated that in his opinion from his experience the latch on the right rear door was in such a condition that he believed it could have opened “had the car been jarred as in running over rough terrain.” There is no showing that the car was being driven over rough terrain but on the contrary was being driven at a moderate rate of speed and in a careful manner. Therefore, the opinion of this witness is of little value.
In addition, it is further shown by the testimony that the Mercury automobile was being followed by one Fontenot, son-in-law of the deceased, in his car, and although he testified that this surface of this black top road was pretty rough, he admitted he had no exact idea as to the exact spot that this accident occurred. He also stated that he saw the door fly all the way open, however, he had previously given a statement which he admitted signing, in which he had stated that:
“ * * * About a mile north of Eunice I noticed the right rear door of the car ahead being driven by Mrs. Ledoux come open. It appeared to be about half way opened and it appeared that Mr. Ardoin who was riding on the right rear seat was trying to close the door, that it went back nearly closed and then it came back completely opened and at that time I saw Mr. Ardoin’s hat fall out of the car, he fell face first and his feet appeared to be hung in the car and he was drug for about a length of the car * * * ”
Fontenot testified that he did not remember saying that the door “opened some and then closed back some,” however, he admitted that it was possible that he had said it.
After reading the entire testimony we believe that this door came open as the result of some act on the part of the deceased. Even if we were in error in such a belief, the plaintiff has failed to prove any negligence on the part of the driver or owner of the automobile.
For the above and foregoing reasons, the judgment of the District Court is affirmed.